# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | |
|---|---|
| **DONNA J. LILLY**, | Case No. 5:08cv00115 |
| *Plaintiff* | REPORT AND |
| v. | RECOMMENDATION |
| **MICHAEL J. ASTRUE**, | By: Hon. James G. Welsh |
| Commissioner of Social Security, | U. S. Magistrate Judge |
| *Defendant* | |

The plaintiff, Donna J. Lilly, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ('the agency") denying her claim for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

The Commissioner's Answer was filed on June 29, 2009 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered the next day, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

At the time of the administrative decision the plaintiff was forty-five years of age,[1] with a high school education, a certified nursing assistant ("CNA") certificate, and with a vocational history which included work as a CNA/psychiatric aide, flagger, data entry person, medical billing clerk, cashier, and sandwich maker. (R.10,34,47,121,126-127,133-145,201,216.) In her appeal the plaintiff contends that the administrative law judge ("ALJ") erred in concluding that she was not disabled due to the combined effects of her mental health and physical problems. In his response the Commissioner argues that substantial evidence supports the administrative conclusion that the plaintiff retains the functional ability to perform the range of sedentary work[2] as outlined by the vocational witness. Each party has moved for summary judgment; no written request was made for oral argument,[3] and the case is now before the undersigned for a report and recommended disposition.

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the parties' respective motions for summary judgment denied, the final decision of the Commissioner be vacated, and the case remanded pursuant to *sentence four* of 42

---

[1] At this age the plaintiff is classified as a "*younger person*," and pursuant to the agency's regulations age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.920(c).

[2] *"Sedentary work"* is defined in 20 C.F.R. T 404.1567(a) to involve lifting no more than 10 pounds at a time and occasionally carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of standing and walking is often required in carrying-out job duties, and jobs are classified as sedentary if walking and standing are required occasionally and other sedentary criteria are met.

[3] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

U.S.C. § 405(g). [4]

I. **Standard of Review**

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB on or before the date that she was last insured.[5] "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id*. (*quoting Craig v. Chater*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [ its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The Commissioner's

---

[4] In *Melkonyan v. Sullivan*, 501 US 89, 101-102 (1991), the Supreme Court stated that in § 405(g) actions, such as the instant case now before this court, "remand orders must either accompany a final judgment affirming, modifying, or reversing the administrative decision in accordance with sentence four, or conform with the requirements outlined by Congress in sentence six."

[5] Pursuant to the agency's regulations, the plaintiff must prove she became disabled on or before her date last insured in order to establish a DIB claim. 20 C.F.R. § 404.141. In this case the plaintiff's last insured date is June 30, 2006. (R.8,29,33,114-120.)

conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## II.     Administrative History

The record shows that plaintiff protectively filed her application on February 15, 2006, alleging a disability beginning April 4, 2005. (R.8.112-113.) Her claim was denied both initially and on reconsideration, and an administrative hearing was held on September 27, 2007 before an ALJ. (R.8,41-77,78-85,87-104,106-107,121-133,204-218.) The plaintiff was present, testified, and was represented by counsel. (R.8,41,86,93-95.) Bonnie Martindale, a vocational witness, was also present and testified. (R.8,41,105.)

Utilizing the agency's standard sequential evaluation process, the plaintiff's claims were denied by written administrative decision dated December 28, 2007. (R.14-20.) The ALJ concluded that the plaintiff sustained physical injuries in a work-related motor vehicle accident in early April 2005, that she underwent an accident-related cervical discectomy and fusion, and that she has chronic neck, hand, back and knee pain. (R.10,12-13.) He noted that she had a history of obesity and prior to the accident that she had a "fair work/earnings record." (R.10.) *Inter alia*, the ALJ also took note of the plaintiff's pre-existing mental health issues (a bipolar condition, depression, anxiety, an obsessive-compulsive disorder, and a personality disorder). (*Id.*) Based on his assessment of the entire medical record, the ALJ concluded that the residuals of the plaintiff's accident-related injuries

and her pre-existing mental health problems were, in combination, *severe* [6] impairments; however, he concluded that her other medical problems (diabetes, hypertension and gastrointestinal reflux disease) were not decisionally significant conditions. (R.12-30.) After determining that the plaintiff's condition did not medically equal a listing-level physical or mental impairment, [7] the ALJ concluded at the final decisional step that the plaintiff retained the functional ability to perform a range of sedentary work. (R.30-35.)

After the ALJ's issuance of his adverse decision, the plaintiff made a timely request for Appeals Council review. (R.108-111.) Her request was denied (R.1-4), and the decision of the ALJ now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

### III. Facts

As outlined in her application and related submissions, the plaintiff contends that her ability to work is substantially limited due to multiple physical and emotional conditions, including chronic lower back, neck and knee pain, an inability to stand "more than a minute" without assistance, an inability to walk "more than 15 minutes without rest," left hand weakness and an attendant inability

---

[6] Quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. § 404.1520(c).

[7] The Listing of Impairments ("the listings") is in appendix 1 of subpart P of part 404 of 20 C.F.R. It describes for each of the major body systems impairments that the agency considers to be severe enough to prevent an individual from doing any gainful activity, regardless of the individual's age, education, or work experience. 20 C.F.R. § 404.1525.

to lift, kidney failure, impaired vision due to a cataract, anxiety, depression, OCD (obsessive-compulsive disorder), an inability "[to] do paperwork," and an inability "[to] concentrate." (R.125, 144,152-153,178-179,192-200,209-215,219-225.)

Consistent with her application's list of mental health issues, her medical records document diagnoses of depression, anxiety and OCD, and they document her ongoing treatment for these psychiatric conditions by John Jayne, M.D. at least since February 2003. (R.443-445,450,453,459-468,505-527.) As noted by the ALJ in his decision, during the extended period during which the plaintiff was being treated with a medication regime for manic symptoms (Geodon), depression (Trazodone or Celexa), anxiety (Lexapro) and panic symptoms (Xanax), Dr. Jayne's office records also document the plaintiff's various work and functional efforts. (*See* R.17-18.) However, throughout the period relevant to the plaintiff's claim, [8] Dr. Jayne's records additionally document her significant and persistent depressive symptoms following a work-related motor vehicle accident in early April 2005. (R.511-514.) Based on his significant longitudinal treatment history, Dr. Jayne concluded that in combination the plaintiff's deteriorated physical and mental health were disabling. (R.505-510.)

Although a state agency psychologist concluded that the plaintiff had a "severe" mental impairment, she further concluded that the medical record did not demonstrate this condition to be of disabling proportions "at the time she last met insured status." (R.481-499.) This non-disability assessment was based, however, on the reviewer's erroneous understanding that the plaintiff's

---

[8] In this case the decisionally relevant time period is between April 4, 2005 (the plaintiff's alleged disability onset date) and June 30, 2006 (the date her insured status expired).

6

insured status expired at the end of December 2005, when it in fact did not expire until the end of June 2006. (*Compare* R.498. *with e.g.,* R.114.)

During the time period directly relevant to the decision in this case, the plaintiff was receiving her medical care primarily, but not exclusively, through the Augusta Regional Free Clinic and Augusta Medical Center ("AMC"). These records show that she was treated for a number of transient and chronic medical problems, including a sinus infection, recurrent abdominal pain, a sore throat, rib pain of undetermined origin, congestion, bronchitis, persistent knee pain following a fall, possible community-acquired pneumonia, a kidney infection, high blood sugar, urinary urgency, and an ingrown toenail. (R.276,286-313,347-349,351-354,388--433.)

Additionally, her medical records show that in early April 2005 the plaintiff sustained a neck injury in a motor vehicle accident, which required significant ongoing treatment. She was initially treated at Patient Care Plus (Drs. Patricia Chisum, Kathy Keller, and Diane Landauer). (R.269-275.) A cervical MRI on April 11 demonstrated a "large diffuse disc herniation "at C5/6 and a "left posteolateral disc herniation" at C6/7. (R.272.) A follow-up neurosurgical consultation at University of Virginia Medical Center ("UVAMC") on April 13 confirmed these findings, and a cervical discectomy and fusion was scheduled for May 9, 2005. (R.362,364-365.) On that date she underwent C5/6 and C6/7 anterior cervical discectomies which significantly decreased her neck and arm pain. (R.234-248,362-363.)

Within a month of this surgery the plaintiff developed unrelated low back pain. An MRI at

UVAMC on June 15 disclosed "mild" generative lumbar disc disease at L1/2 and L3/4, a significant "tethered" spinal cord condition, and a soft tissue tumor at approximately L1-L2, for which no surgical intervention was recommended. (R.350,355,357-361.)

Following her neck surgery at UVAMC, it was recommended that the plaintiff pursue a course of "aggressive" physical and occupational therapy in conjunction with an attendant pain management approach. (R.350.) And consistent with this recommendation, the plaintiff began treatment through Augusta Pain Management (Dr. Darlinda Grice, *et als*.) on August 15, and she began the first of several cycles of outpatient physical therapy at AMC on July 25, 2005. (R.316-346,362-363,563-564.) As part of this treatment regime, the plaintiff also participated in a two-day Isenhagen work systems assessment [9] in late August 2005. (R.277-285.)

Consistent with her diagnosed lumbar disc disease and a tethered spinal cord, the Isenhagen testing demonstrated that the plaintiff had significant difficulties with any prolonged statice or flexed postures due to attendant leg pain and weakness. (*Id.*) Consistent with her post-surgery cervical condition, this testing similarly demonstrated the plaintiff had decreased coordination bilaterally and her significant difficulties with overhead and lifting activities. (*Id.*) Additionally, this testing demonstrated the plaintiff's physical inability to perform any of her past relevant work. (*Id.*)

---

[9] The Isernhagen Work System functional capacity evaluation used for this evaluation is a two-day assessment of an individual's functional capabilities. It is designed to measure safely and objectively: repetitive lifting capacity at various levels; repetitive push, pull, and carrying capacities; hand grip strength; tolerance for elevated work; prolonged trunk flexion in sitting and standing; prolonged trunk rotation in sitting and standing; prolonged crawl, knee and sustained crouch positions; repetitive squat; tolerance for prolonged sitting and standing; maximum walking, stairs and stepladder capacity; balance; and hand coordination. (R.277-285.)

In addition to a cycle of physical therapy in February and March 2006 (R.316-317), the plaintiff saw Dr. Kenneth Boatright in early February (R.314-315) and the UVAMC Orthopaedic Clinic in March for orthopaedic evaluations of her bilateral arthritic knee condition.[10] (R.347-348) In March she she received nutrition therapy for her impaired glucose tolerance (R.388); in April she saw Dr. Marc Shields for a diabetic eye examination [11] (R.469-471), and throughout 2006 and 2007 she continued her long-term treatment through Augusta Pain Management. (R.540-546,548-562)

On referral by the Free Clinic, the plaintiff was also seen in December 2006 and in January 2007 by Dr. John MacIlwaine for chronic bilateral arm and hand weakness and numbness. (R.533-537.) Based on his clinical examination and the results of an abnormal electrodiagnostic study, the plaintiff was found at that time to exhibit a "moderately severe ulner neuropathy in the left upper extremity," diffuse tenderness in both shoulders, and bilateral arm pain, weakness and numbness. (R. 530-532,535-537.)

### IV. Analysis

#### A.

As part of the ALJ's consideration of an August 2005 independent Isernhagen functional capacity assessment, the ALJ stated that the plaintiff's "experienced" subsequent improvement "because [she] was able to sit through her one-hour hearing in September 2007." (R.14.) On appeal,

---

[10] Bilateral chondromalacia of the patella. (R.314-315.)

[11] On examination, the opthalmologist found the plaintiff's best corrected visual acuity to be 20/20 in her right eye with a 1+ posterior subcapsular cataract and 20/100 in her left eye with a 2-3z+ posterior subcapsular cataract. This examination did not disclose any diabetic retinopathy. (R.471.)

9

the plaintiff properly argues that by basing a finding on the plaintiff's demeanor at the hearing, the ALJ impermissibly utilized a "sit and squirm" test. *See Tyler v. Weinberger,*, 409 F.Supp. 776, 789 (EDVa. 1976) (a claimant's pain may be disabling even if the claimant does not "sit and squirm" at the administrative hearing; *Wander v. Schweiker*, 523 F.Supp. 1086, 1094 (D Md. 1981) ("[I]t is inappropriate for the ALJ to judge a claimant by reference to some 'Sit and Squirm' index."); *Woods v. Heckler*, 625 F.Supp. 1450, 1454 (WDVa. 1986) ("sit and squirm" jurisprudence has been discredited in this circuit); *Hicks v. Heckler*, 756 F.2$^d$ 1022 (4th Cir. 1985); *Van Huss v. Heckler*, 572 F.Supp. 160 (WDVa. 1983); *Sinclair v. Barnhart*, 2005 U.S. Dist. LEXIS 9192, *8 (WDVa. 2005), 103 Soc. Sec. Rep. Service 679, ___ . In short, it was reversible error of the ALJ in this case to discount a widely recognized and objective functional testing protocol simply because the plaintiff did not appear disabled at the administrative hearing, and a remand is warranted for this reason alone.

### B.

In his decision, the ALJ also made reference to other evidence relating to plaintiff's activities as part of his analysis. For instance, he stated that claimant "lived by herself and was independent of 6 years" (R.12), was "working with a workers compensation rehabilitation worker" in October 2005 (R.21), and was "taking care of her mother" in the Spring of 2007 (R.27). However, he did not articulate how this evidence, or any other evidence in the record, contradicts the plaintiff's claim that her physical problems significantly limit her ability to sit, stand or walk, and her mental health problems significantly interfere with her ability to concentrate or persist with any activity (R.48,51,54-56). Given this lack of discussion by the ALJ', the court *inter alia* cannot determine whether the ALJ's discount of the Isernhagen assessment was, or was not, based solely on plaintiff's demeanor at the hearing. Accordingly, a remand on this issue is warranted so that the ALJ can

specifically explain how the evidence in the record, including plaintiff's demeanor at the hearing, supports his conclusion that plaintiff' "continued to experience improvement" after the Isernhagen functional capacity evaluation.

## C.

As a further assignments of error on appeal, the plaintiff points to the ALJ's significant decisional reliance on the state agency psychologist's June 30, 2006 mental functional assessment which was predicated on her erroneous belief that the plaintiff's insured status had expired six months earlier (R.496). By "adopt[ing] and incorporat[ing] by reference" the non-examining, non-treating, psychologist's summary (R.498) and erroneously finding that her "determin[ation] was made when [the plaintiff's] insured status expired on June 30, 2006" (R.19), the ALJ in this case based his functional capacity decision on a significant factual mistake. It was his decisional obligation to develop a full and fair record, which included an accurate and logical nexus between the evidence and his result, in order to permit to permit meaningful judicial review. *See Mitchell v. Fortis Benefits Ins. Co.*, 163 Fed. Appx. 183, 187 (4th Cir. 2005). When, as here, the evidence on which the ALJ relied does not support his functional capacity conclusion, his the decision cannot be upheld. *See Caserta v. Astrue*, 2009 U.S. Dist. LEXIS 97316, *38-39 (WDPa. 2009).

## D.

In light of the above findings, the court does not need to reach the plaintiff's remaining claims that the ALJ erred by failing to give the requisite decisional weight to treating source opinions [12] and

---

[12] Without reaching the merits of the plaintiff's claim that the ALJ erroneously discounted treating source retrospective diagnoses or opinions concerning the extent of her pre-existing impairments, it is noteworthy that such evidence along with corroborating lay testimony can be properly used to establish a disability onset date. *McLendon v. Barnhart*, 184 Fed. Appx. 430, 431-432 (5th Cir 2006); *Jones v. Chater*, 65 F.3d 102, 103-104 (8th Cir. 1995); *see also Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

that he also erred by weighing the findings of the plaintiff's counselor and one of her physician's on the basis of inconsistent inferences.[13]

## V. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is not supported by substantial evidence;

2. The Commissioner's final decision improperly relied on a "sit and squirm " test supports the decisional conclusion that plaintiff' "continued to experience improvement" after the Isernhagen functional capacity evaluation;

3. The Commissioner's final decision failed to articulate how the plaintiff's activities contradict her claim that her physical problems significantly limit her ability to sit, stand or walk, and her mental health problems significantly interfere with her ability to concentrate or persist with any activity;

4. By adopting and incorporating by reference the state agency reviewer's mental functional capacity assessment, the ALJ's functional assessment as of the plaintiff's last insured date was not based on substantial evidence;

5. Substantial medical and activities evidence does not exist in the record to support the Commissioner's findings concerning the plaintiff's symptoms and functional limitations as of her date last insured;

6. Substantial evidence does not exist to support the Commissioner's finding that through the plaintiff's last insured date that she retained the residual function capacity top perform a range of sedentary work activity;

---

[13] While the discussion herein does not reach the merits of the plaintiff's *inconsistence inference* claim, it merits mention that on its face this claim appears troubling to the court due to the seeming willingness of the ALJ to base two decisionally significant retrospective eligibility findings on the basis of inconsistent inferences. (*Compare* R.26 *with* R.27.)

12

7. The final decision of the Commissioner should be reversed and the case remanded pursuant to Sentence Four of 42 U.S.C. § 405(g) for further consideration and, if necessary, further development of the record;

8. The remand should direct that, in the event the Commissioner is unable to determine on the extant record that plaintiff is disabled within the meaning of the Act, he is to recommit the case for further evidentiary proceedings at which both sides may introduce additional evidence; and

9. Should the remand of this case result in the award of benefits, plaintiff's counsel should be granted an extension of time pursuant to Rule 54(d)(2)(B) within which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the agency; provided, however, any such extension of time **would not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that the summary judgment motions of both parties be DENIED, that the Commissioner's decision denying benefits be VACATED, that the case ben REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for further consideration in accordance with this Report and Recommendation.

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 18th day of November 2009.

/s/ *James G. Welsh*
United States Magistrate Judge